IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17 CV 216

| | |
|---|---|
| LINDA MARIE DANNHEIM, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> **Acting Commissioner of the Social Security** ) <br> **Administration,** ) <br> ) <br> **Defendant.** ) <br> ──────────────────────────── ) | **ORDER** |

This matter is before the Court on the parties' cross motions (# 12, 15).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling.[2] For the reasons set forth below, Plaintiff's motion for summary judgment is DENIED and the Commissioner's motion for summary judgment is GRANTED.

**I.  Procedural History**

On November 4, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Transcript of Administrative Record ("T.") 21.) On the same day, Plaintiff filed a Title XVI application for supplemental security income. (T. 21.) In both applications, Plaintiff alleged a disability onset date of October 15, 2012. (T. 21.)

---

[1] Plaintiff filed a Motion for Judgment on the Pleadings (# 12). This Court's Local Rules provide that the Plaintiff in a Social Security case must file a Motion for Summary Judgment. See LCvR 7.2(a). Consequently, the Court construes Plaintiff's motion (# 12) as one seeking summary judgment.

[2] To the extent Plaintiff is attempting to raise new issues in her Reply (# 17), these issues have not been considered. See LCvR 7.2(e) ("Such Reply shall be limited to five pages and may only address issues raised for the first time in the Commissioner's Motion and Memorandum.").

On December 23, 2013, Plaintiff's claims were denied initially, and they were denied upon reconsideration on March 31, 2014. (T. 21.) On April 24, 2014, Plaintiff filed a written request for hearing. (T. 21.)

On April 28, 2016, a hearing was held in Charlotte, North Carolina, and Plaintiff appeared and testified. (T. 21.) At the hearing, attorney Richard Kettler ("Kettler") represented Plaintiff. (T. 21.) The Administrative Law Judge ("ALJ") permitted a postponement of the hearing to allow Kettler to obtain several missing records that were important to the adjudication of Plaintiff's disability claims. (T. 21.) The hearing was rescheduled to June 9, 2016. (T. 21.)

On June 9, 2016, Plaintiff appeared and testified at the hearing, which was held in Charlotte, North Carolina. (T. 21.) Brenda Cartwright, a vocational expert ("VE"), was also present at the hearing. (T. 21.) Attorney Kettler represented Plaintiff at the hearing. (T. 21.)

On September 21, 2016, the ALJ issued a decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 15, 2012, through the date of the ALJ's decision, September 21, 2016. (T. 21-31.) Plaintiff requested review of the ALJ's decision. (T. 7.) The Appeals Council denied Plaintiff's request for review. (T. 7-9.) On December 4, 2017, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See Compl. (# 1).

## II.     Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step

inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following, in order: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or medically equal the severity of one or more of the listing of impairments contained in Appendix 1 of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled, and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id.

3

The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five by using the testimony of a VE, who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

## III. The ALJ's Decision

In her September 21, 2016 decision, the ALJ ultimately found that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (T. 31.) In support of this conclusion, the ALJ made the following specific findings:

(1) The claimant meets the insured requirements of the Social Security Act through June 30, 2017.

(2) The claimant has not engaged in substantial gainful activity since October 15, 2012, the alleged onset date (20 C.F.R. § 404.1571 et seq. and § 416.971 et seq.).

(3) The claimant has the following severe impairments: lumbago, obesity,[3] and a history of polysubstance abuse (20 C.F.R. §§ 404.1520(c), 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).[4]

(5) The claimant has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except she has no requirement to climb ladders, ropes or scaffolds; and she is limited to occasional climbing of

---

[3] The ALJ noted that Plaintiff stands 5'3" (without shoes) and currently weighed 261 pounds. (T. 29.)
[4] The ALJ specifically looked at Listings 1.04, 1.04A, 1.00, 3.00, 4.00, 12.04, 12.09. (T. 24-25.)

stairs and ramps, balancing, stooping, kneeling, crawling, and crouching.[5] The claimant is also limited to simple, routine, and repetitive tasks with occasional decision making and occasional changes to the work duties.[6]

(6) The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965).[7]

(7) The claimant was born on June 6, 1977, and she was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. §§ 404.1563, 416.963).

(8) The claimant has a limited education and can communicate in English (20 C.F.R. §§ 404.1564, 416.964).

(9) Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. §§ 404.1568, 416.968).

(10) Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)).[8]

(11) The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2012, through the date of the ALJ's decision, September 21, 2016 (20 C.F.R. §§ 404.1520(g), 416.920(g)).

(T. 21-31.)

## IV. Standard of Review

Title 42, United States Code, Section 405(g) provides that an individual may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits.

---

[5] The regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which includes sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).
[6] If the ALJ found that if Plaintiff could perform a full range of sedentary work, a finding of "not disabled" would have been mandated by Medical-Vocational Rule 201.25. (T. 30.)
[7] The ALJ found that Plaintiff has past relevant work as a general house worker. (T. 29.)
[8] The VE testified that an individual with Plaintiff's RFC could perform the following representative occupations: (1) escort-vehicle driver, which has 830,000 jobs in the United States; (2) microfilm doc prep, which has 2.9 million jobs in the United States; and (3) tube operator, which has 73,000 jobs in the United States. (T. 30.)

Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's final decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she was not disabled is supported by substantial evidence in the record, and whether the ALJ reached her decision based on the correct application of the law. Id.

## V. Discussion[9]

### A. The ALJ's mental RFC finding is consistent with Mascio.

In her first assignment of error, Plaintiff argues that the ALJ erred by failing to incorporate terms into her RFC finding that account for moderate impairment in the ability to maintain concentration and persistence. Pl.'s Mem. (# 13) at 6. Plaintiff contends that the facts of her case are nearly identical to the facts presented by Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). Pl.'s Mem. (# 13) at 7. Plaintiff concludes that remand is required. Id. at 8.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July

---

[9] This opinion reflects the Code of Federal Regulations as it stood on the relevant date, which is the date of the ALJ's decision: September 21, 2016. See (T. 31.)

2, 1996) provides that the ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. In formulating a RFC, the ALJ is not required to discuss each piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion. Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). With respect to the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her other work-related abilities on a function-by-function basis[.]" SSR 96-8p, 1996 WL 374184, at *1.

In Mascio, the Fourth Circuit Court of Appeals held that limitations in concentration, persistence, or pace cause work-related limitations with staying on task, and while the ALJ may find that no limitations are required, an explanation is necessary. 780 F.3d at 638. The Fourth Circuit Court of Appeals further held:

> Perhaps the ALJ can explain why [the Plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the Plaintiff's] residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the Plaintiff's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted an emphasis added).

The instant case is distinguishable from Mascio. First and foremost, the instant case shows the ALJ's consideration of the evidence relating to Plaintiff's mental impairment. The ALJ found that Plaintiff had a history of polysubstance abuse, which the ALJ found to be a severe

7

impairment.[10] (T. 23.) The ALJ found that Plaintiff's mental impairment did not meet or equal the criteria of Listings 12.04 and 12.09. (T. 25-26.) The ALJ also considered whether the "paragraph B" criteria were satisfied.[11] (T. 25.)

The ALJ concluded that the record revealed that Plaintiff displayed "little" in the way of limitations due to a mental impairment.[12] (T. 25.) The ALJ also noted that Plaintiff had received "no treatment or medications" for any psychiatric impairment. (T. 25.) Finally, the ALJ found that Plaintiff failed to allege depression or a mental limitation in her disability applications or in her hearing testimony before the ALJ. (T. 25-26.)

The ALJ considered the four areas of function addressed in the regulations to evaluate Plaintiff's mental ability to do basic work activities. (T. 26.) The ALJ concluded as follows: Plaintiff's mental impairments cause no restriction on activities of daily living; only mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (T. 26.) Plaintiff has never been hospitalized, and she has never experienced extended episodes of decompensation. (T. 26.) In sum, the ALJ determined that the "paragraph B" criteria were not satisfied. (T. 26.)

---

[10] A "severe impairment" is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).
[11] The ALJ noted that to satisfy "paragraph B" criteria, the mental impairment must result in at least wo of the following: marked restriction of activities in daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of an extended duration. (T. 25.)
[12] A claimant bears the burden of submitting evidence that establishes the degree to which her impairments limit her RFC. See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").

Second, the ALJ considered the relevant medical opinion evidence in the record, which came from the State agency psychological consultants.[13] (T. 29.) The ALJ noted that it was determined that Plaintiff could perform simple, routine, repetitive work. (T. 29.)

This Court's review of the psychological evidence from the State agency psychologists reveals that the ALJ's conclusions are supported by substantial evidence. For example, on March 18, 2014, Arne Newman, Ph.D. evaluated Plaintiff's records. (T. 120.) Dr. Arne noted that Plaintiff had no current or past mental health contact. (T. 120.) Plaintiff had positive relationships with coworkers. (T. 120.) Plaintiff's work history showed she was able to serve as both the co-owner and manager of a Pizzeria. (T. 120.) Dr. Arne concluded that the record demonstrated that Plaintiff's alleged depression was only "partially credible." (T. 120.) Dr. Arne further concluded that Plaintiff's alleged depression was a non-severe impairment. (T. 120.) Finally, Dr. Arne noted that the consultative examiner stated, "From a psychological standpoint, the claimant's prognosis is excellent." (Tr. 120) (emphasis added.)

Consistent with the foregoing, the Court concludes that the ALJ fully accommodated Plaintiff's severe mental impairment by including an appropriate limitation. See Palmer v. Colvin, No. 2:16CV00065-MOC, 2016 WL 7223450, at *7 (W.D.N.C. Dec. 13, 2016) ("[T]he ALJ assessed the RFC to accommodate alleged impairments pursuant to her depression and limited the plaintiff to routine, simple tasks and superficial contact with the public and her co-workers."). Mascio requires nothing greater.

In sum, the ALJ considered Plaintiff's RFC in accordance with Mascio. Moreover, the ALJ's RFC is supported by substantial evidence. See Bird v. Comm'r of Soc. Sec. Admin., 699

---

[13] The ALJ noted that no treating or examining source had imposed specific limitations that would preclude all work. (T. 29.)

9

F.3d 337, 340 (4th Cir. 2012) ("When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied the correct legal standards and the ALJ's factual findings are supported by substantial evidence.").

### B. The ALJ's discussion regarding the ability to remain "on task" is sufficient.

Next, Plaintiff argues that the ALJ's discussion of the ability to remain "on task" elsewhere in the decision is insufficient to account for the absence of a term in the RFC accounting for limits in concentration, persistence, and pace. Pl.'s Mem. Supp. (# 13) at 9-12. Plaintiff concludes that the ALJ's decision must be vacated and reversed or remanded for a new and "fairer" hearing. Id. at 12.

Mascio does not mandate that the ALJ include an "on-task" limitation in every case involving moderate difficulties in concentration, persistence, or pace. See Holbrook v. Berryhill, No. 3:16-CV-00713-RJC, 2018 WL 325244, at *4 (W.D.N.C. Jan. 8, 2018) (recognizing that Mascio does not stand for the proposition that "a detailed analysis of Plaintiff's ability to stay on task [is required] every time an ALJ finds moderate limitations in concentration, persistence or pace"). When there is no explicit limitation included for the ability to stay on task, "as long as the ALJ can connect her conclusion to the record by way of narrative reasoning, the RFC can take many forms in the face of moderate limitations in concentration, persistence, or pace." Darby v. Berryhill, No. 1:16-CV-00366-RJC, 2018 WL 310136, at *6 (W.D.N.C. Jan. 5, 2018); see also Ponder v. Berryhill, No. 1:15-CV-00289-RJC, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017) (holding that "Mascio only requires a remand when an ALJ's opinion is 'sorely lacking' in a manner that 'frustrates meaningful review'") (quoting White v. Colvin, No. 3:15-CV-00197-FDW, 2016 WL 3381265, at *5 (W.D.N.C. June 14, 2016)).

In the instant case, as noted above, the ALJ provided a detailed analysis of Plaintiff's potential and actual limitations resulting from her mental impairment. Moreover, Plaintiff even concedes that the "on task" discussion was elsewhere in the ALJ's discussion. Pl.'s Mem. Supp. (# 13) at 9-12; see (T. 29). The ALJ adequately discussed her RFC findings and accounted for Plaintiff's ability to stay "on task." In fact, the ALJ specifically limited Plaintiff to "simple routine repetitive tasks with occasional decision-making and occasional changes to the work duties." (T. 26.); see Rice v. Berryhill, No. 3:16-CV-00798-FDW, 2018 WL 912276, at *3 (W.D.N.C. Feb. 15, 2018) (court affirms RFC finding that limited the claimant to unskilled work, occasional public contact, and stable environment with no frequent changes); Bruce v. Berryhill, No. 5:16-cv-178, 2018 WL 736054, at *4 (W.D.N.C. Feb. 6, 2018) (court held that "a limitation regarding workplace changes and decision-making adequately accounts for a moderate limitation in concentration, persistence, and pace").

In sum, Plaintiff has failed to show that the ALJ committed legal error. See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) ("[A] reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard.") (internal brackets omitted).

### C. The ALJ properly considered Plaintiff's allegations of pain.

In Plaintiff's final assignment of error, she argues that the ALJ's statements regarding Plaintiff's opioid addiction have no relevance to her subjective complaints, degree of pain, and its limiting effects. Pl.'s Mem. Supp. (# 13) at 12-14. Plaintiff concludes that because the ALJ's credibility finding was colored by the assertions regarding addiction and pain, the ALJ's decision must be reversed or remanded for a new and "fairer" hearing. Id. at 13-14.

11

SSR 16-3p,[14] effective March 16, 2016, addresses the "Evaluation of Symptoms In Disability Claims." SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). The Ruling "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." Id. at *1. The term "credibility" was eliminated from SSR 96-7p because "subjective symptom evaluation is not an examination of an individual's character." Id.

A two-step process is employed for evaluating a claimant's symptoms. Id. at *3. Pursuant to step one, the Social Security Administration will assess whether the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. Id. A claimant will not be found disabled based on alleged symptoms alone. Id. at *4.

Under the second step, the Social Security Administration will evaluate the intensity and persistence of the claimant's symptoms, such as pain, to determine the extent to which the claimant's symptoms limit his ability to perform work-related activities. Id. In addition to looking at all the evidence to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms, the Social Security Administration will also look to the following:

(1) Daily activities;

(2) The location, duration, frequency, and intensity of pain or other symptoms;

(3) Precipitating and aggravating factors;

---

[14] SSR 96-7p was superseded by SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), which is applicable to ALJ decisions issued on or after March 28, 2016. As noted, the instant ALJ decision was issued on September 21, 2016. See (T. 31).

(4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, received for relief of pain or other symptoms;

(6) Any other measures used to relieve pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

Id. at *7.

In the instant case, the ALJ made the following finding regarding Plaintiff's subjective symptom evaluation:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the claimant's statements concerned the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(T. 28.)

As the ALJ's decision relates to opioid addiction, she found as follows. Plaintiff admitted to outpatient treatment at Addiction Recovery Medical Services ("ARMS") for opioid addiction. (T. 27.) Plaintiff stated she was obtaining medication on a weekly basis, but when her Xanax was stolen, she lost that privilege. (T. 27.) Plaintiff now must report daily for her medications. (T. 27.) While Plaintiff was treated by primary care provider Dr. Misra, two referrals for medication management were made where Plaintiff was discharged. (T. 28.)

Plaintiff's medical records from September 30, 2015 show that she was seen at ARMS for opioid addiction. (T. 28.) At that time, Plaintiff's urine test was positive for marijuana, oxycodone, and Subutex. (T. 28.) At Plaintiff's initial assessment, she reported snorting six Percocet pills and two and a half Subutex pills (from the street) on September 28, 2015. (T. 28.) Plaintiff also admitted smoking marijuana on September 29, 2015. (T. 28.) Plaintiff stated that she was prescribed Percocet on a weekly basis and had also gotten pain pills off the street for the last six years. (T. 28.) Plaintiff admitted to a long history of polysubstance abuse. (T. 28.) Plaintiff stated she had been snorting medications for the past five years. (T. 28.) Plaintiff also admitted to averaging at least 12-15 pills per day, which cost her between $40 and $80 per day. (T. 28.)

In September 2015, Plaintiff was admitted to ARMS. (T. 28.) At that time, she was diagnosed with opioid use disorder and opioid withdrawal. (T. 28.) Plaintiff was treated through the outpatient Buprenorphine Opioid Treatment Program on an outpatient basis. (T. 28.)

The ALJ concluded with the following:

> <u>Certainly, the claimant's admission to opioid addiction over the last six years calls into question her subjective complaints, degree of pain and the limiting effects thereof.</u> In addition, the undersigned notes the substantial gap in the claimant's treatment records following her admission into the ARMS program. Her medical records show no treatment for her alleged chronic back pain from September 2015 to the present.

(T. 29) (emphasis added).

The ALJ merely recognized that Plaintiff was treated for and suffered from an opioid addiction. (T. 27-28.) An addiction to strong pain medication relates to and potentially explains

why Plaintiff might have been taking so much strong pain medication. Therefore, Plaintiff's opioid addiction is relevant.[15]

The ALJ properly considered Plaintiff's addiction to pain medication as merely <u>one factor</u> in determining the extent to which her pain caused work-related limitations. For example, the ALJ also found that Plaintiff had a gap in treatment following her admission to the addiction treatment program. (T. 29.) The ALJ also recognized that Plaintiff had "good symptom control." (T. 29.). The ALJ noted that Plaintiff had no treatment for alleged back pain from September 2015 to August 2016. (T. 28.) Finally, the ALJ restricted Plaintiff to a limited range of sedentary work.[16] (T. 26.)

In sum, the ALJ did not commit legal error. <u>See</u> <u>Craig</u>, 76 F.3d at 589 (recognizing that the issue before the court is whether the ALJ's finding that the Plaintiff is not disabled is supported by substantial evidence and reached through the correct application of the relevant law).

## VI. Conclusion

Considering the foregoing, Plaintiff's motion for summary judgment (# 12) is DENIED, and the Commissioner's motion for summary judgment (# 15) is GRANTED.

Signed: October 12, 2018



Max O. Cogburn Jr
United States District Judge

---

[15] The Court notes that when a claimant with evidence of drug or alcohol abuse is found disabled, the ALJ must determine if the addiction or alcohol serve as a contributing material factor to the disability determination. 20 C.F.R. §§ 404.1535(a), 416.935(a).

[16] Sedentary work is the lowest level of exertion in the regulations. <u>See</u> 20 C.F.R. §§ 404.1567(a), 416.967(a).